Bryan Hurlbutt (ISB # 8501)
Laurence J. Lucas (ISB # 4733)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
bhurlbutt@advocateswest.org
llucas@advocateswest.org

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO CONSERVATION LEAGUE, | ) | No. 1:18-cv-353 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| SHANNON POE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## NATURE OF THE ACTION

1.     The Idaho Conservation League ("ICL") brings this Clean Water Act ("CWA") citizen enforcement suit against Defendant Shannon Poe for his ongoing CWA violations in operating a suction dredge(s) and discharging pollutants to the South Fork Clearwater River in Idaho without a required National Pollutant Discharge Elimination System ("NPDES") permit, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

2.     Suction dredge mining involves using a motorized apparatus attached to an underwater nozzle to suck up riverbed material, sorting the material for gold on a watercraft-mounted sluice box, and then discharging sediment and other pollutants to the river.

3.      ICL, and federal and state agencies, have repeatedly given notice to Mr. Poe that he must comply with the CWA by obtaining an NPDES permit to suction dredge mine in Idaho. Poe has repeatedly refused to comply with these legal requirements, has denied that he is subject to the CWA's requirements, has encouraged others to lawlessly suction dredge mine in Idaho, and has dredged and discharged pollutants to the South Fork Clearwater River without an NPDES permit on numerous occasions in 2014, 2015, and 2018.

4.      ICL seeks declaratory and injunctive relief prohibiting Poe from continuing to operate a suction dredge in Idaho without obtaining and complying with an NPDES permit.  ICL also seeks the imposition of CWA civil penalties on Poe for each and every violation he committed, as well as an award of costs, including ICL's attorney and expert witness fees.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court under the Clean Water Act, 33 U.S.C. § 1365(a), which vests the district courts with jurisdiction over citizen enforcement actions, such as this case.

6.      Defendant Poe has violated, and continues to violate the CWA by continuing to conduct suction dredge mining in Idaho and discharging pollutants without an NPDES permit. The requested relief is proper under the CWA, 33 U.S.C. §§ 1319(d) and 1365(a).

7.      Venue is proper in this Court pursuant to 33 U.S.C. § 1365(c)(1) because the Defendant's unlawful point source discharges are located in Idaho and thus are within this district.

8.      As required by the CWA, 33 U.S.C. § 1365(b)(1)(A), ICL provided Defendant Poe with notice of its intent to sue more than sixty (60) days before filing this Complaint.  At the same time, ICL notified the Administrator of the United States Environmental Protection Agency

("EPA"), the Administrator of EPA Region 10, and the Director of the Idaho Department of Environmental Quality ("DEQ") of its intent to sue Poe.  Neither EPA nor DEQ have commenced an action that constitutes diligent prosecution to redress Poe's CWA violations.

**PARTIES**

9.     Plaintiff IDAHO CONSERVATION LEAGUE (ICL) is a non-profit conservation organization incorporated under the laws of Idaho with its principal place of business in Boise, Idaho.  ICL's mission is to protect clean water, clean air, healthy families, and Idaho's unique quality of life.  ICL works to protect these values through public education, outreach, advocacy, and policy development.

10.     As Idaho's largest state-based conservation organization, ICL represents over 30,000 supporters, many of whom have a deep personal interest in protecting and restoring water quality and fisheries throughout the rivers and streams of Idaho, including the South Fork of the Clearwater River watershed.

11.     ICL has staff, members and supporters who live, recreate, and/or work in and around the South Fork Clearwater River watershed and other watersheds adversely impacted by Mr. Poe's suction dredge mining operations and unlawful pollution discharges.

12.     ICL staff, members, and supporters frequently visit, recreate, and engage in activities on and around the South Fork Clearwater River and the South Fork Clearwater watershed, which are adversely impacted by Poe's suction dredge mining operations and discharges.  For example, ICL has members who regularly visit the South Fork Clearwater River and its tributaries to pursue recreational activities, including fishing, boating, wildlife and fish viewing, collection of foods (berries, mushrooms, plants, and other non-commercial forest products), exploration, wading, swimming, picnicking, and other activities.  ICL members also

value and appreciate the natural aesthetics of the South Fork Clearwater River and its tributaries for cultural, religious, and personal reasons.  ICL members have a strong interest in the protection of threatened, endangered, and sensitive fish (and other aquatic species) in Idaho, including species present in the South Fork Clearwater River.

13.    Pollution discharges from a suction dredge degrade water quality and, thereby, harm fish and other aquatic life and diminish aesthetic quality of the water body, among other adverse impacts detailed below.

14.    ICL has suffered and continues to suffer injury-in-fact on account of Poe's CWA violations as alleged herein.  The injury-in-fact is traceable to Poe's conduct and would be redressed by the relief ICL seeks.

15.    ICL also suffers injury-in-fact because ICL has devoted time, energy, and money to protecting water quality and fisheries, advocating for the establishment of suction dredge mining rules and regulations, and monitoring and investigating miner and agency compliance with laws and regulations governing suction dredge mining in the South Fork Clearwater River. ICL participated in EPA's creation of the general NPDES permit for suction dredge mining in Idaho.  ICL participated in the Forest Service's and BLM's establishment of suction dredge mining rules for the South Fork Clearwater River.  ICL participated in state agency processes to develop regulations for suction dredge mining on the South Fork Clearwater River and in issuing permits.  Over the last four years, ICL has closely monitored suction dredge mining on the South Fork Clearwater River, including Poe's mining.  ICL has sent staff and hired contractors to visit the South Fork Clearwater River to observe and document illegal dredging, including Poe's.  ICL staff have also spent time gathering and reviewing information from state and federal agencies documenting Poe's illegal dredging.

16.     Defendant SHANNON POE is an individual domiciled in Concord, California, who has traveled to Idaho and spent lengthy periods in Idaho conducting and/or encouraging others to conduct suction dredge mining activities in the South Fork Clearwater River since at least 2014 and continuing to this day.

## APPLICABLE LEGAL REQUIREMENTS

**The Clean Water Act NPDES Permit Requirement**

17.     Congress adopted the Clean Water Act with the objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Central to achieving these goals is the National Pollutant Discharge Elimination System ("NPDES") permitting program, which requires a prospective suction dredge miner to first obtain an NPDES permit prior to discharging any pollutant to a navigable water.

18.     The CWA prohibits the "discharge of any pollutant by any person" to waters of the United States, unless authorized by an NPDES permit. 33 U.S.C. §§ 1311(a), 1342(a).

19.     The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

20.     The CWA defines "point source" as a "discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

21.     The CWA defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

22.     The CWA defines "person" as "an individual, corporation, partnership,

association, State, municipality, commission, or political subdivision of a State, or any interstate

body." 33 U.S.C. § 1362(5).

23.    The citizen suit provision of the CWA authorizes "any citizen" to "commence a

civil action on his own behalf" in federal district court against any person who is alleged to be in

violation of the "an effluent standard or limitation" of the Act. 33 U.S.C. § 1365(a).

**NPDES Permitting for Operating a Suction Dredge in Idaho**

24.    To facilitate NPDES permitting for pollution discharges from suction dredges in

Idaho, EPA adopted General Permit No. IDG370000 (effective May 6, 2013). In April 2018,

EPA updated and reapproved General Permit No. IDG370000, "Authorization to Discharge

Under the National Pollution Discharge Elimination System for Small Suction Dredge Miners in

Idaho" (hereinafter "Suction Dredge General Permit").

25.    The Suction Dredge General Permit is available for miners discharging pollutants

from small suction dredges (dredges with intake nozzles less than or equal to 5 inches in

diameter and a cumulative rating of 15 horsepower or less) to some but not all Idaho rivers. The

Suction Dredge General Permit places conditions on the discharge of rock and sand from each

mining operation, and requires monitoring and reporting, to protect water quality and aquatic

resources.

26.    To seek coverage under the Suction Dredge General Permit, a miner must submit

a Notice of Intent ("NOI") to the EPA seeking coverage for eligible mining operations.

Authorization to discharge requires written notification from EPA that coverage has been granted

to the operation.

27.    To obtain authorization to discharge pollutants from a suction dredge for an

operation that is not eligible for the Suction Dredge General Permit, a miner must apply for and

receive an individual NPDES permit from EPA.  Individual NPDES permits must include

conditions that will ensure compliance with the CWA.  At a minimum, NPDES permits must

include technology-based pollution limitations, any more stringent limitations necessary to meet

water quality standards in the receiving water, and pollution discharge monitoring and reporting

requirements.  *See* 33 U.S.C. §§ 1311, 1318, 1342.

28.     Because threatened fish species protected under the Endangered Species Act

inhabit the South Fork Clearwater River, the Suction Dredge General Permit is not available by

default for miners dredging on the South Fork Clearwater.  However, in 2016, the Forest Service

and BLM completed a process (described below) making the Suction Dredge General Permit

available for up to 15 miners each year on the South Fork Clearwater River.

**Federal Land Management Agency Permitting Requirements**

29.     Suction dredge mining on federal land requires approval from the federal land

management agency in charge of administering those lands.

30.     U.S. Forest Service mining regulations require a notice of intent to operate to be

submitted by any person proposing operations which might cause a significant disturbance of

surface resources on National Forest lands.  36 C.F.R. § 228.4(a).  Each notice of intent to

operate must include information sufficient to identify the area involved, the nature of the

proposed operations, and the method of transport.

31.     If the proposed operations will likely cause a significant disturbance, then the

operator must submit a more detailed Plan of Operation ("POO").  36 C.F.R. § 228.4(c).  The

POO must include information about the operator; a map or sketch sufficient to locate the

operations on the ground, roads or access routes to be used, and the approximate location and

size of areas where surface resources will be disturbed; and information sufficient to describe or

identify the type of operations proposed and how they would be conducted, the type and standard of roads and means of transportation, the period of activity, and measures to be taken to meet requirements in 36 C.F.R. § 228.8 to minimize environmental impacts.  36 C.F.R. § 228.4(c).

32.     Bureau of Land Management ("BLM") mining regulations establish procedures and standards to prevent "unnecessary or undue degradation of public lands by operations authorized under the mining laws."  43 C.F.R. § 3809.1.  For BLM administered lands in Idaho, operators must contact BLM to determine whether they need to submit a notice or a plan of operations to BLM, or whether the operations constitute casual use.  *See* 43 C.F.R. § 3809.31(b)(2).

33.     To facilitate the permitting of small-scale suction dredging on the South Fork Clearwater River and two of its tributaries (French Creek and Orogrande Creek), the Forest Service and BLM issued a Decision Notice and Finding of No Significant Impact ("DN") on July 6, 2016, based on an Environmental Assessment issued in December 2015 and after Endangered Species Act consultation with the U.S. Fish and Wildlife Service and the National Marine Fisheries Service.

34.     The DN allows the Forest Service and BLM to approve up to 15 suction dredging operations each year on the South Fork Clearwater River, and makes those dredgers eligible to obtain NPDES coverage under the Suction Dredge General Permit.  The DN requires a POO for each operation on the South Fork Clearwater River, as well as a copy of an approved IDWR Recreational Dredging Permit and an approved NPDES permit from the EPA.  The DN imposes other requirements and limitations for suction dredging on the South Fork Clearwater River designed to protect water quality, threatened fish species, and other resources.

**State of Idaho Permitting Requirements for Suction Dredging**

35.     Operating a suction dredge in Idaho also requires approval from the Idaho Department of Water Resources ("IDWR") under the Stream Channel Protection Program, Idaho Code § 42-3801 *et seq*., and may also require approval from the Idaho Department of Lands when dredging in state-designated navigable streams.

36.     IDWR issues expedited, one-year "letter permits" for recreational suction dredge mining using a nozzle five inches in diameter or less and a motor that is rated at a maximum of 15 horsepower.  For suction dredge mining that exceeds these limitations, a miner must submit a Joint Application for Permits and receive a stream channel alteration permit from IDWR prior to altering the stream channel.

37.     IDWR's recreational mining instructions notify dredgers that they need to contact EPA to obtain an NPDES permit, and make clear that a stream channel alteration permit does not serve in lieu of other permits that may be required by other state and federal agencies.  *Stream Channel Alteration by Recreational Mining Activities: IDWR Instructions for 2018*, IDWR (Revised Jun. 22, 2018), p. 1.

38.     In 2004, the Idaho Water Resource Board approved the *South Fork Clearwater River Plan - Comprehensive State Water Plan*, which designated the South Fork Clearwater River as a State Recreational River under Idaho Code § 42-1734A.  The plan limits and/or prohibits certain activities, including recreational dredge mining, in order to preserve water quality and/or wildlife habitat.  The plan also requires that dredge sites to be inspected by IDWR with a fisheries biologist.

39.     To meet statutory requirements and state water quality standards, and to protect fisheries, IDWR limits the amount of recreational dredge mining allowed on the South Fork

Clearwater River during the July 15 to August 15 dredge season each year, requires each dredge site to first be delineated with a fisheries biologist, and imposes other conditions and requirements on miners.

## BACKGROUND FACTS

**The South Fork Clearwater River**

40.     The South Fork Clearwater River is a navigable water located in north-central Idaho and is a tributary to the Clearwater River.  The South Fork Clearwater flows from headwaters at the confluence of the Red River and American River through Idaho County, the Nez Perce-Clearwater National Forest, and the Nez Perce Reservation to its mouth at the town of Kooskia.

41.     The State of Idaho has designated the South Fork Clearwater River as a State Recreational River.  The South Fork Clearwater River is also eligible for designation under the federal Wild and Scenic Rivers Act due to its outstandingly remarkable values.

42.     The fish community of the South Fork Clearwater River is still dominated by native species, including fish species listed as "threatened" under the Endangered Species Act. Threatened fish species of the South Fork Clearwater River include Snake River steelhead trout, Snake River fall Chinook salmon, Columbia Basin bull trout.  In 2010, USFWS designated the mainstem South Fork Clearwater River and several tributaries as critical habitat for bull trout.

43.     The South Fork Clearwater River is important for other native fish as well, including westslope cutthroat trout, sculpin, several species of cyprinids, and mountain whitefish.  Native coho salmon and Pacific lamprey exist at low levels in the South Fork Clearwater, and have recently been the subject of reintroduction efforts by the Nez Perce Tribe.

44.     The South Fork Clearwater River is designated by the State of Idaho as an

"impaired" water body along its entire length, because it fails to meet state water quality standards developed under the CWA.  The South Fork Clearwater River is impaired due to excessive sediment and temperature pollution.  In 2003, the Idaho Department of Environmental Quality ("DEQ") prepared the *South Fork Clearwater Subbasin Assessment and Total Maximum Daily Loads* to address sediment and temperature pollution.

45.    Suction dredging is considered to be one of six sources of sediment pollution on the South Fork Clearwater River, all of which require a NPDES permit to operate.  There are several sediment Pollutant Control Strategies currently being implemented on the South Fork Clearwater River, including bank stabilization, channel stabilization, bank re-vegetation and sediment traps.

**Adverse Impacts of Suction Dredging**

46.    Suction dredge mining is a method used to search for gold in riverbeds.  Suction dredge miners utilize an underwater nozzle to suck up riverbed material, sort out gold above water, and then discharge sediment and other materials to the river.

47.    Typically, the miner wears scuba diving-like equipment, dives underwater, dislodges and/or moves cobble and boulders, and operates the nozzle to suck up sand, gravel, other riverbed materials, and water.  Generally, dredge operators work their way to bedrock and work along the bedrock cleaning out crevices with small pry bars and other similar tools.

48.    Materials are sucked through the nozzle, and then travel through a pipe or hose to a floating watercraft.  On the watercraft, sucked-up materials pass through a sluice box, which separates out heavy materials including gold.  Materials not separated out are discharged from the sluice box to the river.

49.    The nozzle is pressurized by a high-pressure pump powered by a gasoline motor located on the watercraft.  Another gasoline-powered motor powers an air compressor to provide

oxygen to the underwater divers.

50.     Suction dredging takes materials that had settled into the riverbed and suspends them back into the water column, discards tailings that form large piles, and creates large holes in the riverbed.  Dredging creates large holes on-site, and the tailings piles send sediment downstream.

51.     High levels of sediment may negatively impact a river in several ways.  Higher levels of sediment, when dropped from the water column downstream, can clog potential spawning gravel.  Sediment may also fill in natural, existing pools that juvenile and adult salmonids inhabit.  A greater sediment load downstream turns normally clear water a murky brown, decreasing visibility for fish, making them more vulnerable to predators and less successful at capturing their own food.  These impacts are illustrated in Figure 1, below.

**Figure 1.** Photo of an operating suction dredge and sediment discharge plume from *Water Quality Summary Report 34: A Recreational Suction Dredge Mining Water Quality Study on the South Fork Clearwater River*, Idaho Department of Environmental Quality (Jan. 13, 2003).



52.     In 2003, DEQ collected sediment discharge data and evaluated bedload and turbidity downstream from dredges operating in Idaho.  The evaluation showed turbidity levels

within 500 feet of dredge discharges exceeded state water quality standards.  DEQ estimated that 15 dredges operating in the South Fork Clearwater River for 8 hours per day would move up to 2 cubic yards of riverbed material per hour and discharge 314 tons per day of sediment pollution.

53.      Sediment impacts are more severe where several dredges are operated near each other, especially when the same areas are dredged for several consecutive years.

**Defendant Poe's Unlawful Suction Dredging in 2014**

54.      In 2014, Defendant Shannon Poe applied for and received approval from IDWR to suction dredge mine in Idaho during the July 15 through August 15 suction dredge mining season that year.  Defendant Poe, however, never applied for or received an NPDES permit authorizing him under the Clean Water Act to suction dredge mine and discharge pollutants in Idaho in 2014.

55.      On information and belief, Defendant Poe operated a suction dredge and discharged sediment and/or other pollutants to the South Fork Clearwater River on one or more days from July 15 through August 15 during the 2014 dredge season, without a valid NPDES permit.  These discharges occurred on each and every day that Mr. Poe operated a suction dredge during 2014.

56.      Defendant Poe is the Chief Executive Officer and/or President of the American Mining Rights Association ("AMRA").  AMRA's webpage lists mining claims it asserts AMRA holds.  AMRA's webpage lists four AMRA mining claims in Northern Idaho totaling 80 acres. Poe posts writings on AMRA's webpage, describing his suction dredge mining activities.

57.      In these online posts, Defendant Poe admitted to dredging on 13 days in 2014 on the South Fork Clearwater River.

58.      Defendant Poe wrote an August 5, 2014 post on the AMRA webpage titled "Out

of control EPA, Sasquatch, Ratchilla and dredging for two weeks in Idaho." In the post, Defendant Poe admitted that during summer 2014 he and AMRA participated in the "Occupy the Water" suction dredge mining event on the Salmon River in Riggins, Idaho. He stated: "Shortly after the Occupy event, which AMRA attended and supported along with ICMJ, we packed up our two dredges, a Proline 6" (big blue) and a Proline 4" (little red) and headed for our claim about an hour away on the South Fork of the Clearwater to dredge openly in opposition to the EPA." Poe also stated: "We obtained our $35.00 non-resident suction dredge permits from the Idaho Water Resources Department and put our dredges in the water July 14th in anticipation for the opening of the season which runs from July 15th to August 15th." Poe then described his activities, and the activities of others, suction dredge mining for 13 days in Idaho. Poe stated "Day 13" was "our last day dredging."

59.    In an August 16, 2014 post to the AMRA website titled "What is AMRA working on?", Defendant Poe stated, "we just got back two weeks ago from dredging in opposition to the EPA's over-intrusive and ridiculous regulation stating suction dredges need to purchase a 'pollutant discharge permit' even though the state is, and has been issuing permits for dredging."

**Defendant Poe's Unlawful Suction Dredging in 2015**

60.    In 2015, Defendant Poe again applied for and received approval from IDWR to suction dredge mine in Idaho during the July 15 through August 15 suction dredge mining season that year. Poe, however, never applied for or received an NPDES permit authorizing dredging and discharging pollutants in Idaho during 2015.

61.    On information and belief, Defendant Poe operated a suction dredge and discharged sediment and/or other pollutants to the South Fork Clearwater River on one or more days from July 15 through August 15 during the 2015 dredge season, without a valid NPDES

permit.  These discharges occurred on each and every day that Poe operated a suction dredge during 2015.

62.     In online posts, Defendant Poe admitted to dredging on the South Fork Clearwater on at least eight days or more days during 2015.

63.     In an August 3, 2015 post to the AMRA website titled "We are back from Idaho", Defendant Poe stated: "We wanted to thank all the miners who stood up to this unbelievable illegal activity by the USFS in Idaho over the past two weeks."

64.     In a September 1, 2015 post to the AMRA website titled "AMRA stands up to the USFS in Idaho," Defendant Poe stated: "The 2015 Idaho suction dredge season began as another year with AMRA standing up to the EPA and their illegal schemes to ban suction dredging, but it soon became a fight with the USFS and yet another attempt by a government agency to ban suction dredging on the South Fork of the Clearwater in Idaho."  Poe said he left California on July 14, 2015, and drove 23 hours to the South Fork Clearwater River.  Poe stated: "We dredged for 6 straight days and filled a few bottles with gold."  Poe then described dredging "on the 7th day" until the Forest Service showed up to talk to him and other dredgers.  Poe then said "we started dredging again the next morning", but again the Forest Service showed up to discuss his and other miners dredging.  Poe stated that the Forest Service "cost me over 5 days out of the water."  Poe then stated, "I continued to dredge and in the final days, pulled a nice amount which would not fit in small bottles any longer."

**ICL's 2016 Notice of Intent to Sue and Follow-up Notices in 2017 and 2018**

65.     In May 2016, ICL sent Defendant Poe a written notice letter under the CWA advising him that ICL intended to initiate a Clean Water Act citizen suit against Poe if he continued to suction dredge in Idaho without an NPDES permit.

66.     Defendant Poe received ICL's notice letter, and responded by letter dated June 14, 2016, stating: "I have no plans to dredge the SF Clearwater this year, and do not intend to dredge in future years without the appropriate permits."

67.     ICL mailed Defendant Poe follow-up notice letters in 2017 and 2018, prior to the dredging season each year, to inform Mr. Poe of ICL's continuing intent to file suit if he operated a suction dredge in Idaho again without an NPDES permit.

**Defendant Poe's Unlawful Suction Dredging in 2018**

68.     In 2018, Defendant Poe again applied for and received approval from IDWR to suction dredge mine in Idaho during the July 15 through August 15 suction dredge mining season.  Poe, however, never applied for or received an NPDES permit authorizing dredging and discharging pollutants in Idaho during 2018.

69.     In his 2018 application to IDWR, Defendant Poe stated that he plans to dredge from July 15 through August 15, 2018, and stated that he intends to remove his dredge(s) from the river on August 16, 2018.

70.     Upon information and belief, Defendant Poe operated a suction dredge(s) on the South Fork Clearwater River on one or more days from July 15 to the present, all without a valid NPDES permit.

71.     Upon information and belief, and based on his past practices, current ongoing violations, and statements, Poe will continue to regularly conduct suction dredge mining on the South Fork Clearwater River during this year and in future years, without obtaining the required CWA permit.

72.     Discharges of sediment and/or other pollutants have occurred on each and every day that Poe operated a suction dredge(s) during 2018.

73.     In online posts, Defendant Poe admits to dredging on the South Fork Clearwater River on multiple days in 2018, admits he has purposefully not obtained an NPDES permit from EPA or approval from the Forest Service, and admits he plans to continue dredging through August 15, 2018, and in future years.

74.     In a July 12, 2018 post to the AMRA website titled "Dredging Idaho......", Poe stated: "Tomorrow we leave for Idaho to dredge our real property mining claims with a valid Idaho dredge permit from IDWR.  We, along with all the other miners on this river have met all the conditions required for legally dredging on the river."  Poe continued: "The Nez Perce National Forest is still demanding a Plan of Operations (PoO) which is fundamentally not required by law.  We are not obtaining a PoO, nor a permit the EPA states is also needed as they have no jurisdiction over this water."

75.     On or around July 18, 2018, the Forest Service notified Poe it would issue a notice of non-compliance and/or a warning of non-compliance for failing to submit and receive approval of a plan of operations.  On or around July 21, 2018, Poe received from the Forest Service a warning notice, a notice of noncompliance, an incident report, and a plan of operations form to fill out.

76.     In a July 22, 2018 post to the AMRA webpage titled "Idaho Dredge Update, Sunday July 22," Poe stated: "I've now missed three full days of mining, and when you average ounces per day, it adds up pretty fast the losses you incur for this material interference."

77.     In a July 24, 2018 post to the AMRA webpage titled "Hello from Idaho dredge camp," Poe stated: "Today was the best dredging day on the SFCW I've had since I've been dredging up here."  Poe stated that the Forest Service came by and issued another notice of non-compliance, but said he and another dredger were going to "plan how we are going to double our

gold tomorrow, Thursday, Friday and so on."

78.     In a July 26, 2018 post to the AMRA website titled "Idaho Dredging Update," Poe stated this was "[y]et another day partially missed to deal with this USFS nonsense," and "[w]e thought yesterday's clean out was good....until today's!"

79.     In a July 28, 2018 post to the AMRA website titled "South Fork Clearwater update, Saturday July 28th," Poe stated: "We are going dredging in about an hour so again USFS, if you think you have a case against us, I am at mile marker 39."

80.     On August 2, 2018, IDWR issued a Notice of Violation to Poe for dredging outside of the area approved in his IDWR permit, and for other infractions identified in IDWR's July 30, 2018 site inspection.

81.     In a August 3, 2018 post to the AMRA website titled "SFCW Update," discussing the IDWR notice of violation Poe stated: "I do not dispute these minor and what some may consider trivial violations but rules are rules and we believe everyone should be held to the same standards as anyone else, us included."

82.     In an August 8, 2018 post to the AMRA website titled "SF Clearwater update and California dredging for 2019," Poe stated that after meeting with IDWR "we are back to dredging."  Poe also stated: "We are optimistic that our meeting brought up some very valid issues which need to be discussed for next year."  Poe then stated, "[h]ere in Idaho we are going to continue to dredge."

83.     In addition to these admissions by Poe, federal and state agency staff and others have observed and documented Poe operating a dredge(s) and discharging pollutants to the South Fork Clearwater River on more than one occasion starting on July 15, 2018, and continuing into August 2018 as of the date of this Complaint.

84.     Defendant Poe operated a suction dredge in the South Fork Clearwater River on July 15, 2018, near mile marker 32.6 on Highway 14.

85.     Defendant Poe operated a suction dredge in the South Fork Clearwater River on July 17, 2018, near mile marker 32.6 on Highway 14.

86.      Defendant Poe operated a suction dredge in the South Fork Clearwater River on July 18, 2018, near mile marker 39.2 on Highway 14.

87.     Defendant Poe operated a suction dredge in the South Fork Clearwater River on July 27, 2018, near mile marker 39 on Highway 14, as shown in Figure 2 below.

**Figure 2.**   July 27, 2018 photograph of Mr. Poe discharging sediment from his suction dredge to the South Fork Clearwater River.



88.     Defendant Poe's suction dredge was still in the South Fork Clearwater River, set up to dredge, on August 1, 2018, near mile marker 39 on Highway 14, as shown in Figure 3 below.

89.      Defendant Poe has continued to operate a suction dredge in the South Fork Clearwater River on subsequent dates in August 2018, and will continue doing so at least until

the August 15th end of the state-designated dredging season.

90.     The discharges of pollutants from the suction dredge(s) described herein were made, and will continue to be made from suction dredge hoses and/or other discernible, confined, and/or discrete conveyances.

**Figure 3.**   August 1, 2018 photograph of Mr. Poe's dredge, a dredge pit excavated from the bed of the South Fork Clearwater River, and downstream (to the right) dredge spoils.



91.     Defendant Poe has never obtained an NPDES permit for the discharges described herein.

92.     Defendant Poe's violations of the CWA are serious and degrade the quality of navigable waters in Idaho that fish and other wildlife rely on to survive.  Poe's violations contribute to water quality impairment on the South Fork Clearwater River.

93.     Defendant Poe has benefitted economically from his violations of the CWA.

94.     Defendant Poe has received notice of the action he must take—obtaining an NPDES permit or ceasing his suction dredging—to comply with the CWA.  Defendant Poe was notified multiple times from 2014 up to the present of his legal obligation to obtain and comply with an NPDES permit to operate and discharge pollutants from a suction dredge in Idaho,

including by ICL, EPA, the Forest Service, and IDWR.  Poe, however, has chosen to flout the

law and has purposefully dredged without an NPDES permit and has encouraged others to do the

same.

**CLAIM FOR RELIEF**
**Clean Water Act Violations**

95.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

96.     Defendant SHANNON POE has violated and continues to violate section 301 of

the Clean Water Act, 33 U.S.C. § 1311(a), by owning and/or operating a suction dredge(s) and

discharging pollutants, including sediment, from this point source to the South Fork Clearwater

River without an NPDES permit.  These violations are violations of an "effluent standard or

limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f).

97.     The South Fork Clearwater River is a navigable water subject to Clean Water Act

jurisdiction.

98.     In 2014, Poe operated a suction dredge(s) on one or more days from July 15

through August 15 on the South Fork Clearwater River in Idaho.  Poe discharged pollutants,

including sediment, from the point source dredge(s) to the South Fork Clearwater River on each

day of operations.  Poe did not have an NPDES permit authorizing those discharges.

99.     In 2015, Poe operated a suction dredge(s) on one or more days from July 15

through August 15 on the South Fork Clearwater River in Idaho.  Poe discharged pollutants,

including sediment, from the point source dredge(s) to those waters on those days of operations.

Poe did not have an NPDES permit authorizing those discharges.

100.     In 2018, Poe operated a suction dredge(s) on one or more days from July 15

through the present on the South Fork Clearwater River in Idaho.  Poe discharged pollutants,

including sediment, from the point source dredge(s) to those waters on those days of operations.

Poe did not have an NPDES permit authorizing those discharges.

101.    Defendant Poe's unlawful discharges are continuing and are reasonably likely to recur.  Poe still has not obtained an NPDES permit authorizing pollution discharges from a suction dredge in Idaho.  However, Mr. Poe continues to operate a suction dredge in Idaho and discharge pollutants to waters of the United States, claims the right to operate his suction dredge in Idaho without CWA compliance, and is likely to continue operating his suction dredge in Idaho through the end of the dredge season this year (August 15, 2018) and in future years.

102.    Each and every day that Defendant Poe has owned and/or operated a suction dredge(s) that discharged pollutants to the South Fork Clearwater River without a valid NPDES permit, and each and every day after this date that Defendant Poe continues to own and/or operate a suction dredge(s) that discharges pollutants to the South Fork Clearwater River without a valid NPDES permit, constitutes a separate violation of the Clean Water Act, for which Plaintiff seeks relief as set forth below

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    Declare, hold and adjudge that Defendant Shannon Poe has violated and continues to violate section 301 of the Clean Water Act by discharging pollutants to navigable waters without an NPDES permit on each and every occasion that he has owned or operated a suction dredge(s) discharging pollutant(s) to the South Fork Clearwater River without a valid NPDES permit.

B.    Enjoin Defendant Shannon Poe from further discharging pollutants to the South Fork Clearwater River and any other water of the United States in the State of Idaho except as

expressly authorized by the Clean Water Act and the limitations and conditions of an applicable NPDES Permit.

  C. Assess civil penalties against Defendant Shannon Poe for each and every violation of the Clean Water Act as alleged herein, and as may be committed by Defendant Poe hereafter, pursuant to 33 U.S.C. § 1319(d), adjusted by 40 C.F.R §§ 19.2, 19.4, and 81 Fed. Reg. 43091 (Jul. 1, 2016), which subjects the violator to a penalty of up to $37,500 per violation per day that occurred prior to August 1, 2016, and up to $51,570 per violation per day that occurred on August 1, 2016 and after.

  D. Award Plaintiff its reasonable litigation costs and expenses, including attorney and expert fees, incurred in bringing this action.

  E. Award such other relief as the Court may deem just and proper.


DATED this 10th day of August, 2018.  Respectfully Submitted,

*/s/ Bryan Hurlbutt*
Bryan Hurlbutt (ISB # 8501)
Laurence J. Lucas (ISB # 4733)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
(208) 342-8286 (fax)
bhurlbutt@advocateswest.org
llucas@advocateswest.org

Attorneys for Plaintiff Idaho Conservation League